■ In the Matter of the Arbitration between GRINNELL CORPORATION, Respondent, and AMERICAN DISTRICT TELEGRAPH COMPANY, Appellant.— Judgment entered February 14, 1969, granting motion to compel arbitration and denying cross motion for a stay, affirmed, with $30 costs and disbursements to respondent. The " Commutation Agreement " under scrutiny provided: " In default of agreement as to the amount of the monetary value of any such consideration, such amount will be finally determined by arbitration in New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association." In the implementation of the " Commutation Agreement", a previously honored arrangement between the parties known as the " Device Sales Agreement", which also contained an arbitration clause, was canceled. All this was pursuant to the judgment of Judge WYZANSKI in *United States* v. *Grinnell Corp.* (Civil Action No. 2785, D. R. I.), which stated in part: " If they have not already done so by the date of entry of this Judgment, Grinnell, ADT and AFA are ordered to cancel the Device Sale Agreements between them dated February 18, 1954; *provided however, that nothing contained herein shall be deemed to prohibit the parties from agreeing to com-*

*mute payments thereunder to a definite dollar amount, payable in installments at the option of the parties;*" (emphasis added). The foregoing direction was made in a final decree rendered in July of 1967, in a civil antitrust action, brought by the Government against the petitioner-respondent Grinnell Corporation, respondent-appellant American District Telegraph Company, and others. This, following a remand from the United States Supreme Court following its affirmance, except as to a minor matter not pertinent to this appeal, of a 1964 determination of Judge WYZANSKI that the defendants were violating the antitrust laws. The decree made no finding that the Device Sales Agreement was invalid, and the portion of the decree above referred to was made as an incident to the required dissolution of the relationship of the parties and in recognition of the fact that outright cancellation of the agreement without provision for commutation would have been an improper confiscation of Grinnell's valuable property rights. (*Hartford-Empire Co.* v. *United States,* 323 U. S. 386, 414.) The appellant concedes that it had the right to retain the devices here in issue and conceded to be worth in excess of $6,000,000 only "after payment of a reasonable consideration." In view of the probable and anticipated disagreement as to the commuted dollar value of these devices, the provision for arbitration encompassing this issue was and is obviously not only understandable but the only practical solution to a matter that had to be resolved to effectuate the antitrust decree. Furthermore, it may parenthetically be noted that if arbitration were not to be had under the agreement, now challenged, there would remain the matter of the viability of the arbitration agreement under the terminated "Device Sales Agreement". (See *Matter of Leonard,* 35 Misc 2d 421; *Matter of Selly,* 178 Misc. 1076; *Matter of Microtan Co. [Edelstein],* 30 A D 2d 938.) Following a series of negotiations entered into at the direction of Judge WYZANSKI by the parties to this appeal and the Government, preceding the making of the final decree, and in supplementation of the duty of appellant to restore the property rights of respondent, the parties solemnized the challenged "Commutation Agreement" in August of 1967. This, after consideration by the court and submission to the interested governmental authorities, without objection, and after having first been approved as to fairness, validity and enforceability by respondent's then counsel. The dissenting opinion suggests that this agreement has "not been approved by the Federal Court" and further suggests that the "written opinion, by a reputable firm of attorneys which had represented ADT (the appellant) in some of the Federal proceedings", which opinion approved the now challenged agreement, "was based upon information received from Grinnell and Grinnell's attorneys". There is nothing in the record which warrants these conclusions. The preamble to the final decree states that it is based in part on "the agreements reached by the parties after the aforesaid opinion [of the Supreme Court]". And it clearly appears that the letter of the reputable firm retained by appellant was not based "upon information received from Grinnell and Grinnell's attorneys", with whom they were dealing at arm's length as adversaries. That this is so becomes increasingly clear when it is noted this reputable firm of attorneys had years before been retained by the management of appellant ADT, shortly after the determination of Judge WYZANSKI in 1964. This same firm represented appellant in the Government action before the Supreme Court and in the remand proceedings. The record discloses that this firm also represents appellant in many other matters, including defending approximately 80 antitrust treble damage actions which have resulted from the Government case. Thus, there is no basis for the suggestion that this firm of attorneys approved the Commutation Agreement upon limited information procured from respondent and its

attorneys. Quite to the contrary, the record discloses the adverse positions of the respective counsel for appellant and respondent and that the Commutation Agreement embodied the suggestions made by this firm of attorneys, fully aware of its responsibilities and obligation to protect, as it did, the interests of appellant. Accordingly, we do not deal with a bare agreement entered into by corporations with interlocking directorates, possibly imposing a burden of proof on the dominant party that the challenged agreement was fair. Rather, we have an agreement reached in a complicated antitrust proceeding which had the scrutiny and the imprimatur of the court and the Department of Justice, and all other counsel in the antitrust suit. And in this connection it may be observed that the federal court was obviously and completely aware of the interlocking directors and dominance of petitioner-respondent which gave rise to the antitrust proceeding. On this presentation there has been no demonstration of a substantial question concerning the validity of the agreement sufficient to warrant the application of CPLR 7503 (subd. [a]) and to rule otherwise would constitute a disregard of the judicial determinations reached in the antitrust proceeding and the factual background which led to the making of the Commutation Agreement. The circumstances leading up to and surrounding the making of this agreement, as disclosed in the record, fully eliminate the need for any further showing of fairness and validity of the challenged agreement. Thus, the arbitration should proceed, unencumbered by the omnibus proceeding subsequently instituted by the respondent, which raises a myriad of issues involving separate alleged wrongs and introducing new parties and questions totally unrelated to the narrow issue of the arbitration clause under appeal. The appeal from the order entered February 11, 1969, denying reargument is dismissed as nonappealable. The appeal from the order entered February 28, 1969, denying resettlement is dismissed as academic. Concur — Capozzoli, McGivern, McNally and Steuer, JJ.; Eager, J., dissents in the following memorandum: Concededly, the "Commutation Agreement" is subject to judicial scrutiny to ascertain whether it is fair and free of fraud, and if the "commutation agreement" is voidable, the limited arbitration provisions therein may not stand. Although the decree rendered by the United States District Court authorized the parties to agree to commute the payments under the "Device Sale Agreements" to a definite dollar amount, payable in installments at the option of the parties, the terms of the agreement in the matter were not considered by the court. In view of the domination and control of American District Telegraph Company (ADT) by Grinnell Corporation (Grinnell) via interlocking directorates, and the substantial benefits accruing to Grinnell under the "commutation agreement" later adopted, Grinnell has the burden of proving its good faith in the transaction and the fairness of the agreement. This particular agreement, allegedly forced on ADT by the six Grinnell directors of ADT (a majority of the ADT board of directors) has not been approved by the Federal court or by any other court. Although the agreement was submitted to and approved, in a written opinion, by a reputable firm of attorneys which had represented ADT in some of the Federal proceedings, such opinion was based upon information received from Grinnell and Grinnell's attorneys and not fully appearing in the record. Furthermore, the opinion assumes, without proper substantiation, that the directors would act "independently in the exercise of their best judgment". Under all the circumstances, the matter of the good faith of Grinnell and the fairness of the agreement present issues of fact and the record does not permit the disposition of these issues as a matter of law; they should be tried forthwith by the court (see CPLR 7503). I would reverse and vacate the judgment of Special

Term, remand the matter for a trial and direct a stay of arbitration in the meantime.