■ DIANA PERONE, an Infant, by Her Mother and Natural Guardian, MICHAELINA PERONE, et al., Appellants, v JAMES N. NICKLAS et al., Respondents. — In an action to recover damages for medical malpractice, etc., plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Oppido, J.), dated October 20, 1982, as denied those branches of their motion which sought to set aside a settlement and restore the case to the Trial Calendar. Plaintiffs also purport to appeal from an order of the same court, dated January 19, 1983, which denied their motion to reargue. Order dated October 20, 1982 affirmed insofar as appealed from. Appeal from order dated January 19, 1983 dismissed. No appeal lies from an order denying reargument. Defendants are awarded one bill of costs. This action was brought to recover damages allegedly sustained by the infant, Diana Perone, at the time of her birth on December 22, 1973 at the Community Hospital at Glen Cove. The plaintiffs allege the negligence and malpractice of the defendant obstetricians, Drs. Reinhardt and Nicklas, and the defendant, Community Hospital at Glen Cove, in the prenatal and perinatal care as well as in the delivery of the infant plaintiff. The plaintiffs' bill of particulars set forth 17 different physical,

psychological and emotional injuries, all of an allegedly permanent nature, that were being attributed to the defendants' malpractice. After enumerating the various claims of injury, the bill of particulars stated that "[t]he infant plaintiff may require operative intervention for her injuries" and the claim was made that the infant's "permanent injuries will effect [sic], preclude or prevent her in competing for and/or obtaining suitable financially and ego rewarding employment in those professions, occupations or vocations which would ordinarily be available to her when she reaches working age, were it not for the injuries enumerated above". After completion of all depositions and pretrial discovery proceedings, the matter came before a medical malpractice mediation panel. That body unanimously determined that there was no liability on the part of the doctors or the hospital. The case initially appeared on the Trial Term Calendar on May 8, 1981, at which time it was conferenced and plaintiffs' counsel made a "bottom line" demand of $75,000. Thereafter, it appeared on the calendar approximately 16 additional times from June through August 24, 1981. On September 8, 1981 plaintiffs' attorney made a demand of $90,000. Negotiations thereafter resulted in a settlement of the case on September 24, 1981 for a compromise figure of $85,000 which was reached with the aid of the court. The minutes taken before Justice Oppido at Trial Term state, in pertinent part: "THE COURT: Mr. Weicholz [attorney for plaintiffs], you may begin. MR. WEICHOLZ: Mr. & Mrs. Perone, we have conferenced and discussed this case several times today and have reached an agreement with the defendants that this case will be settled for $85,000. Upon settlement, this case will be terminated for all times. It will never be reopened in any court at any time. We have asked the Court for the approval of this settlement, and the Court has approved that amount in settlement. In view of the injuries sustained by Diana Perone, I have consented to waive all of my disbursements and have agreed out of the sum of $85,000 to give the infant $55,000. You understand that that is all the money she will receive out of the case, and I have discussed with you the problems in the case as well as the things in the infant's favor. Knowing all of that, do you accept this settlement, Mr. Perone? MR. PERONE: Yes. MR. WEICHOLZ: You have asked me to advise you, Mrs. Perone, and I am advising you at this juncture that you should accept this settlement, and there is no question about it. MRS. PERONE: Okay. THE COURT: Put your stipulation on the record. MR. WEICHOLZ: It is hereby stipulated, consented to and agreed by and between the parties and the respective attorneys that this matter be settled in the sum of $85,000. The attorney for the plaintiffs will prepare an order of compromise submitted to this case [sic] for signature. Upon presentation of the order of compromise together with a general release, the defendants Nicklas — MR. NICHOLSON [Nicklas, Martin and Scanlan's attorney]: The defendant doctors. The defendant doctors will issue a draft in the sum of — the insurance company for the doctors, Employers Mutual, will issue a draft in the sum of $85,000. MR. WEICHOLZ: Pursuant to the terms of the order of compromise? MR. NICHOLSON: That is right. MR. WEICHOLZ: As to the defendant Community Hospital at Glen Cove, this action is discontinued against the Community Hospital without interest, costs or disbursements and with prejudice. THE COURT: Any crossclaims? MR. HEALY [hospital's attorney]: Any and all crossclaims are discontinued". Eight months thereafter, by notice of motion dated May 29, 1982, made returnable on June 30, 1982, the plaintiffs, who were now represented by Sol Lefkowitz, seeking to be substituted for David Weicholz, plaintiffs' attorney at the time of settlement, *inter alia,* moved for an order setting aside the settlement before Justice Oppido and an order granting plaintiffs permission to serve an amended and supplemental bill of particulars. Mr. and Mrs. Perone stated in an affidavit that they felt the sum of $85,000 was "inadequate and not in the best interests of our daughter",

and for that reason they asked the court to set aside such settlement and allow the case to proceed to trial. Claiming that they had no time to reflect upon the amount that had been offered, because Mr. Weicholz had never informed them of any offer prior to September 24, 1981, the Perones urged that a subsequent investigation of their daughter's case by newly retained counsel, Sol Lefkowitz, convinced them that they "were not fully aware of the probable consequences of the birth injury" when they entered into the agreement. This investigation consisted of (1) a physical examination by Dr. Leon Charash, whose report dated April 27, 1982 reconfirmed that Diana "was noted to have an Erb's palsy on the right at birth", (2) a psychological evaluation on April 30, 1982 by Dr. Milton Gurvitz, who attested to the fact that the child had certain emotional problems as a result of her injuries, and (3) an opinion letter dated May 17, 1982 by Dr. Schuyler G. Kohl, who set forth a number of claimed departures from good accepted practice that had been included in the plaintiffs' original bill of particulars and argued before the medical malpractice panel. Mr. Lefkowitz submitted these papers, along with supporting exhibits and a proposed amended verified bill of particulars as part of his motion to (1) substitute himself as attorney for the plaintiffs in place and instead of the former attorney, Mr. Weicholz; (2) set aside the settlement made on September 24, 1981 before Mr. Justice Oppido; (3) permit plaintiffs to serve an amended and supplemental bill of particulars and (4) restore this case to the Trial Calendar. In support of this motion, Mr. Lefkowitz affirmed that the information sought to be included in the amended bill of particulars "do[es] not differ in substance from the allegations of the original bill of particulars". In denying the application to set aside the stipulation of settlement Justice Oppido wrote, in relevant part: "The basis for the instant application is the claim of inadequacy of the amount and a claim of duress. This case involves a claim of malpractice that occurred during the birth of the infant plaintiff. Despite the rhetoric set forth in the moving papers, the basic fact remains that a medical malpractice panel unanimously found no liability against any of the defendants. This fact taken together with the settlement figure of $85,000.00 compels this Court to reject any attempt to reopen this matter with the grave risk of an adverse finding by a jury. The Court finds that the settlement figure was not inadequate in view of the questionable liability. Moreover, in light of the history of the litigation and the numerous settlement conferences before the undersigned, taken together with the express understanding of both parents of the injured infant plaintiff as expressed in the stenographic minutes, dated September 24, 1981, the Court finds absolutely nothing upon which to predicate a finding of duress. While the Court is cognizant that stipulations of settlement are, on occasion set aside, (see *Solack Estates, Inc. v Goodman,* 192 Misc 2d 504 [*sic*], aff'd 78 AD2d 512; *Farraro v Stripekis,* 60 AD2d 861; *Spisto v Thompson,* 39 AD2d 598), the Court concludes that under the facts of this case, such action by the court would not be in the best interest of the infant plaintiff". We affirm. Plaintiffs have failed to demonstrate that the settlement entered into before Justice Oppido was the product of fraud, duress, or mistake. Although the court approved the settlement without having received affidavits from the infant's representative and the infant's attorney, as required by CPLR 1208 (subd [a]) and 1208 (subd [b]), respectively, and without having viewed the infant (see CPLR 1208, subd [d]), the stipulation of settlement is, nevertheless, effective, there being no substantive ground for setting it aside. (See *Storman v City of New York,* 120 NYS2d 569.) Under the particular facts of this case, compliance with CPLR 1208 was merely a ministerial matter. (Cf. *Farraro v Stripekis,* 60 AD2d 861.) Both of the infant plaintiff's parents consented to the settlement in open court, in the presence of their attorney. Justice Oppido, who presided when the stipulation was placed on the record,

was familiar with the facts of the case, discussions had taken place in his presence, and plaintiffs' bill of particulars, medical records for the infant plaintiff, and other material relevant to the infant's condition were available to the court at that time. As noted above, the attorney presently representing plaintiffs acknowledged in his affidavit that the proposed amended bill of particulars does not differ in substance from the original bill of particulars. Thus, the claim of newly discovered injury is belied by the record. The guardian of the infant plaintiff and plaintiffs' attorney should prepare the papers which are necessary for compliance with CPLR 1208, and submit these to Special Term, so that the court, in its discretion, may sign an order of compromise. If the guardian refuses to co-operate, defendants may apply at Special Term for a substitution of the infant plaintiff's present guardian. Finally, we note that the denial of a motion to reargue is not appealable (see, e.g., *Roy v National Grange Mut. Ins. Co.*, 85 AD2d 832, 833; *Wyatt v County of Putnam*, 75 AD2d 850). Thus, the appeal from the order dated January 19, 1983, must be dismissed. Bracken, J. P., O'Connor, Weinstein and Niehoff, JJ., concur.